UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LORI BOMAN | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00077 |
| | § | |
| ALL THE LITTLE THINGS COUNT, | § | |
| L.L.C. AND SANDRA GRAVES, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Lori Boman works as a supervised living provider at a residential group home operated by Defendants All The Little Things Count, L.L.C. and Sandra Graves. She filed this case under the Fair Labor Standards Act ("FLSA"), seeking to be paid for the time she is required to be at the group home, but during which she may sleep. Defendants do not pay Boman for her designated sleep time, even when she has to wake up in the middle of the night to handle an incident. The parties agree on the facts concerning Boman's weekly work schedule and designated sleep times, but dispute how Department of Labor ("DOL") regulations apply to those undisputed facts. Reviewing those regulations and the DOL's longstanding interpretations of them, the Court concludes that Boman is entitled to compensation for the "sleep time" when she is required to be at her workplace. Accordingly, Boman's Motion for Partial Summary Judgment is **GRANTED.**

## I. BACKGROUND

Defendants provide residential group homes for "individuals with intellectual and developmental disabilities." *Services*, All The Little Things Count, http://www.allthelittlethingscount.org/services.html (last visited Apr. 23, 2013). Boman is assigned to a particular residential facility where she supervises the clients in their day-to-day activities and performs household chores. The residential facility is 2,500 square feet, consists of five bedrooms, two bathrooms, a kitchen, and a common living room. Currently, two clients reside in the home.

Defendants hired Boman in February 2011 as a part-time employee. The following November, Boman became a full-time supervised living provider. When Boman was initially hired, she was informed that the position was a "sleepover" position and that Defendant did not compensate any staff members for designated sleep time. Boman questioned the unpaid sleep time policy prior to being offered a full-time position, but ultimately accepted the position with the understanding that the company would not pay for this sleep time.

Boman, who is still employed at the residential facility, begins work at 3:00 p.m. for four consecutive days, Monday through Thursday, and leaves at 9:00 a.m. the next morning, so that she finishes the work week on Friday. The hours on these shifts between 11:00 p.m. and 7:00 a.m. are deemed unpaid sleep time. During these sleep-time hours, Boman is required to stay on the premises and

assist the clients as needed through the night.  Defendant provides Boman with her own sleeping quarters to use during the overnight hours, which consist of a sleeping area, a sitting area, a dresser, a nightstand, a small couch, a desk, and a television.  According to Boman, her supervisor told her not to record the instances in which her sleep was interrupted during the night to assist residents, interruptions that could last from ten minutes to over an hour.  Boman nonetheless logged these interruptions in notebooks.  She alleges that the notebooks were removed from the facility after she filed this lawsuit.

Boman moves for partial summary judgment asking the Court to rule as a matter of law that the time she was required to remain on Defendant's premises from 11:00 p.m. until 7:00 a.m. is compensable under the FLSA.[1]

## II.   STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See*

---

[1] In response, Defendants suggest the Court *sua sponte* grant summary judgment in their favor.

*Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted). Courts may grant summary judgment in favor of a plaintiff on FLSA liability when the undisputed facts demonstrate that the plaintiff is entitled to compensation. *See Chapman v. A.S.U.I. Healthcare of Tex., Inc.*, No. H-11-3025, 2012 WL 3614187, at *7 (S.D. Tex. Aug. 21, 2012) (granting partial summary judgment for plaintiffs on liability in FLSA case).

### III.   ANALYSIS

#### A.   FLSA "Sleep Time" Law

Under the FLSA, employees are guaranteed minimum wage for all time worked and overtime pay for all time worked over 40 hours a week. 29 U.S.C. § 207(a)(1). Not long after the FLSA's enactment in 1938, disputes arose concerning whether the time that employees were required to be on the premises of their employers, but during which they were allowed to sleep, should be included in calculating hours worked. *See, e.g.*, *Strand v. Garden Valley Tele. Co.*, 51 F. Supp. 898, 902–04 (D. Minn. 1943); *Whitsitt v. Enid Ice & Fuel Co.*, 6 Labor Cases ¶ 61,226 (W.D. Okla. 1942), *cited in* 29 C.F.R. § 785.21. As it has for many issues to which the FLSA does not speak directly, the DOL has addressed sleep-time issues in regulations it has promulgated and in opinion letters and other forms of guidance. *See, e.g.*, *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("[R]ulings, interpretations and opinions of the Administrator [of the

FLSA] . . . constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). Those regulations, and clarifications of those regulations, are entitled to deference unless unreasonable. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (holding that the Secretary of Labor's interpretation of an FLSA regulations is "controlling unless 'plainly erroneous or inconsistent with the regulation'" (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989))). Neither party in this case challenges the reasonableness of the relevant DOL regulations and interpretations, *contra Christopher v. SmithKline Beechum Corp.*, 132 S. Ct. 2156, 2167 (2012) (refusing to follow the DOL position on whether pharmaceutical sales representatives qualified for FLSA's "outside sales exemption" because, among other things, the employer's conduct occurred well before the DOL announced a new position on the issue and the DOL's reasoning was inconsistent), so this case turns on how the DOL's interpretation applies to Boman's situation.

  DOL regulations have long provided that "[u]nder certain conditions, an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities." 29 C.F.R. § 785.20; *see also Lott v. Rigby*,

746 F. Supp. 1084, 1088–89 (N.D. Ga. 1990) (discussing sleep time compensation in light of DOL regulations). "An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." 29 C.F.R. § 785.21. Using the example of a telephone operator who is required to "be on duty for specified hours" but who is allowed to "sleep when not busy answering calls," the regulation explains that it "makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is required to be on duty and the time is worktime." *Id.*

After announcing this general "sleep time = work time" rule, the DOL regulations describe another scenario:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own.[2]

---

[2] A plain reading of this regulation indicates that it would not apply to a situation like Boman's, in which the employee is required to be at the employer's premises. In such a situation, the employee does not have "complete freedom from all duties," nor may the employee "leave the premises for purposes of his own." 29 C.F.R. § 785.23. Read thusly, section 785.23 is not an exception to section 785.21, which addresses an "employee who is required to be on duty," but rather addresses the quite different situation of someone who has the option of sleeping at the employer's premises but also has "complete freedom . . . [to] leave the premises" and, for example, go to a movie theater, restaurant, or gym. In this latter situation, when the employee may, but is not required to, sleep at the employer's premises, the justification for compensation is much weaker.
   Despite this natural reading of section 785.23, the DOL has long interpreted the section as applying to "on duty" sleep time in the group home industry, neither party disputes its application in this context, and, as discussed below, Boman prevails even when this regulation is applied. The Court therefore will analyze this case by deciding whether Boman was residing on Defendants' premises for an "extended period[] of time" within the meaning of section 785.23.

*Id.* § 785.23. In this situation, the FLSA does not mandate compensation; instead, "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted." *Id*.

### B. Boman Did Not Reside at the Group Home for an "Extended Period"

Defendants contend that they do not have to pay Boman for her sleep time because she resides at the facility for an "extended period of time" within the meaning of section 785.23. The DOL has issued two interpretations defining what constitutes an extended period of time in the group home industry.[3] The first, a 1981 DOL Opinion Letter, states the following:

> [W]here employees are on duty for less than 120 hours in a week, they can be considered as residing on the employer's premises, provided that they spend five consecutive days or five consecutive nights on the premises. This rule can best be illustrated by concrete examples. . . .
>
> Employees who are on duty from 9 a.m. Monday until 5 p.m. Friday would also be considered to reside on the employer's premises. Even though on duty for less than 120 hours, they are on duty for five consecutive days (Monday through Friday). The fact that they sleep over only four nights does not matter. Similarly, employees who are on duty from 9 p.m. Monday until 9 a.m. Saturday would also be considered to reside on their employer's premises since they are on duty for five consecutive nights (Monday night through Friday night).

Opinion Letter Fair Labor Standards Act (FLSA), WH-505, 1981 WL 179033

---

[3] A third interpretation also cited by the parties, the DOL's 1996 Field Operations Handbook, offers no additional information, but instead simply restates section 785.23 and provides the same examples of qualifying schedules given in the 1981 Opinion Letter and the 1988 Memorandum. *See* DOL 1996 Field Operations Handbook, Rule 31b20.


(Dep't of Labor Feb. 3, 1981). Defendants contend that Boman's work schedule satisfies this Opinion Letter's "five consecutive days" standard because, excluding the sleep time, she is on duty from 3:00 p.m. until 11:00 p.m. on Monday through Thursday, and then from 7:00 a.m. until 9:00 a.m. on Friday. A full reading of the 1981 Opinion Letter, however, casts doubt on whether a single shift that starts on Thursday but carries into Friday would count as two "consecutive days."

But the Court need not decide the outcome of this case under the 1981 Opinion Letter, because the DOL provided further guidance in 1988 that speaks directly to this question. The 1988 Wage and Hour Memorandum provided "further clarification and guidance as to the conditions under which" the DOL's Wage and Hour Division "will not require that sleep time [of group home employees] be compensated." Wage and Hour Memorandum 88.48, 1988 WL 614199 (Dep't of Labor June 30, 1988). This Memorandum cites the 1981 Opinion Letter and "refine[s] and restat[es] the minimum conditions required" to constitute an "extended period of time":

> An employee will be found to reside on the premises for extended periods of time if:
>
> (1) The employee is on duty at the group home and is compensated for at least eight hours in each of five consecutive 24-hour periods; and
>
> (2) The employee sleeps on the premises for all sleep periods between the beginning and end of this 120-hour period.

*Id*.

Boman's schedule does not satisfy the first requirement because she is not "on duty [and] compensated for at least eight hours in each of five consecutive 24-hour periods." *Id*.  The 24-hour period starts when she reports for duty on Monday at 3:00 p.m.  She is compensated for at least eight hours[4] in the first period through 3:00 p.m. Tuesday; at least 8 hours in the second period through 3:00 p.m. Wednesday; at least 8 hours in the third period through 3:00 p.m. Thursday; and at least 8 hours in the fourth period through 3:00 p.m. Friday.  But she does not work after that fourth period, and thus is not considered to reside at the group home for an extended period.  *See Nelson v. Ala. Inst. for Deaf and Blind*, 896 F. Supp. 1108, 1112 (N.D. Ala. 1995) (holding that plaintiffs did not reside at their employer's premises for an extended period in part because they did not work "for at least 8 hours in each of five consecutive 24-hour periods").  The examples provided in the 1988 Memorandum further support this determination.  *See* 1988 Memorandum, 1988 WL 614199 (explaining that "an employee who is on duty and is compensated from 6:00 a.m. to 9:00 a.m. and 5:00 p.m. to 10:00 p.m., Monday through Friday, and who sleeps Monday through Thursday nights on the premises,

---

[4] In fact, Bowman is compensated for ten hours during this period because she is paid from 3:00 p.m. until 11:00 p.m. that evening and then from 7:00 a.m. until 9:00 a.m. the next morning.

9 / 13

would be considered to reside on the premises for extended periods of time").[5] The DOL's 1988 interpretation of its sleep-time regulations therefore demonstrates that Boman was not staying at the group home for a period of time lengthy enough to be considered "extended," in which the employer's premises becomes a kind of second home where the employee enjoys considerable "freedom."  29 C.F.R. § 785.23.

Defendants do not dispute this calculation but instead argue that the 1988 interpretation applies only to "relief workers" and not full-time employees like Boman.  Although the 1988 Memorandum does discuss relief workers, even a cursory reading demonstrates that the "five consecutive 24-hour period" requirement applies to full-time employees.  The Memorandum begins by addressing the DOL's policy of "allow[ing] 'relief' employees who are provided with private quarters in a home-like environment to be treated the same as 'full-time' employees (i.e. those who either reside on the employer's premises permanently or for 'extended periods of time')."  *Id*.  But, the DOL explains, "[a]n essential requirement for this special [relief] position is that a group home have one or more full-time employees who either reside on the premises permanently or 'for extended periods of time.'"  So the Memorandum turns to that prerequisite and focuses on when full-time employees are considered to reside "for extended

---

[5] In this example, the final 24-hour period begins Friday at 6:00 a.m., so the full eight hours the employee works on Friday fall within the fifth consecutive 24-hour period.

periods." *Id*. Indeed, the next sentence cites the 1981 Opinion Letter Defendants rely on, and explains that "it has become clear that further guidance is necessary for employers and employees in the industry." *Id*.

If doubt somehow remains about whether the 1988 Memorandum is clarifying the 1981 Opinion Letter on when full-time employees reside for an extended period, the DOL reiterates that "these employees are called 'full-time' employees" after citing examples of how the "five consecutive 24-hour period" standard works. *Id.*; *see also id.* (further explaining that the Memorandum is talking about requirements for "deduct[ing] sleep time for full-time and relief employees"). And numerous courts have applied the 1988 Memorandum to full-time employees. *See, e.g.*, *Nelson*, 896 F. Supp. at 1112–13 (relying on the 1988 guidance in deciding whether "non-relief employees" resided on the employer's premises for an extended period); *Lott*, 746 F. Supp. at 1085, 1089 (citing the 1988 Memorandum "as defining under what circumstances an employee must be compensated for sleep time" in case involving plaintiffs who worked full time at public group home); *Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 432–33 (W.D. Pa. 2000) (examining the 1988 Memorandum in determining whether the parties' agreement concerning sleep-time compensation was reasonable). Indeed, the 1988 Memorandum's clarification of the "extended period of time" requirement so plainly refers to full-time employees that the Court

has given this defense argument more attention than it deserves.

For these reasons, relevant DOL guidance on the treatment of sleep time in the group home industry establishes that the FLSA requires compensation for Boman's time spent at the facility from 11:00 p.m. to 7:00 a.m.

### C. Reasonableness of the Agreement Not to Compensate Sleep Time

But all this math turns out to have been unnecessary. Recall that even when an employee is residing on her employer's premises for an extended period, an agreement not to compensate for sleep time must be reasonable. *See supra* at 6–7 (citing 29 C.F.R. § 285.23). The 1988 Memorandum also explains when an agreement to deduct sleep time for such employees will satisfy the reasonableness requirement of section 785.23. One of the necessary conditions is that "employees [be] compensated for any interruptions in sleep."[6] 1988 Memorandum, 1998 WL 614199. Defendants do not pay Boman for the time when she is woken up to assist the residents. Accordingly, even if Boman were residing at the group home for an extended period of time, the agreement to pay her is not reasonable because it

---

[6] Others include:

> 1) The employer and the employee have reached agreement in advance that sleep time is being deducted;
> 2) Adequate sleeping facilities with private quarters . . . were furnished;
> 3) If interruptions occurred, employees in fact got at least five hours of sleep during the scheduled sleeping period . . .
> 5) No more than eight hours of sleep time is deducted for each full 24-hour on-duty period.

1988 Memorandum, 1988 WL 614199.

excludes from compensable hours even the time when she is assisting clients rather than sleeping. *See Hultgren v. County of Lancaster*, 913 F.2d 498, 504–08 (8th Cir. 1990) (utilizing the criteria listed in the 1988 Memorandum in determining that the plaintiff's sleep time was improperly uncompensated); *Shannon*, 82 F. Supp. 2d at 432–33 (quoting the Memorandum's criteria that must be met in order to deduct sleep time, including that "employees are in fact compensated for any interruptions in sleep").

### IV.  CONCLUSION

For both of the reasons detailed above, the undisputed facts demonstrate that Boman was entitled to compensation for the designated "sleep time" when she was required to be at the Defendants' residential facility from 11:00 p.m. until 7:00 a.m. Boman's motion for partial summary judgment (Docket Entry No. 31) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this 24th day of April, 2013.

_____
Gregg Costa
United States District Judge